### SCOVILL v. LUDWICK

1. CHATTEL MORTGAGES—TITLE—LIEN THEORY.

   Michigan is a lien-theory state and title to mortgaged chattels remains in the mortgagor.

2. CHATTEL MORTGAGES—VALIDITY.

   A chattel mortgage of cattle and their increase, by one in possession of the cattle under a farm lease agreement by which title to the cattle remained in the lessor, was ineffective to convey any interest to the mortgagee because the mortgagor had nothing to convey.

Appeal from Jackson, John C. Dalton, J. Submitted Division 2 December 3, 1969, at Lansing. (Docket No. 6,536.) Decided December 8, 1969. Rehearing denied January 19, 1970.

Complaint by Glen Scovill against J. E. Ludwick, Fred J. Knight, Charles Whitehead, Sr., and Lila Whitehead, for conversion of mortgaged cattle and misrepresentation. Judgment for plaintiff. Defendant Knight appeals. Affirmed.

*Rappleye & Bannasch* (*R. L. Wilkins,* of counsel), for plaintiff.

*Anderson, Patch, Potter & Patch,* for defendant J. E. Ludwick.

*Kenneth B. Johnson,* for defendant Fred J. Knight.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 15 Am Jur 2d, Chattel Mortgages § 115.
Chattel mortgage on live stock as including increase.  39 ALR 153.

Before: FITZGERALD, P. J., and BRONSON and T. M. BURNS, JJ.

PER CURIAM. In this case, we are faced with one of those situations where the principle wrongdoer is judgment proof and the loss must fall on one of those who dealt with him.

Defendant Ludwick owned a farm which he leased to Charles Whitehead, added party-defendant. Inserted in the written agreement was the following clause:

"It is understood that the farm tools are all the property of Dr. J. E. Ludwick and that the basic herd of 31 cows and 1 bull are also the property of Dr. Ludwick. It is understood as long as the herd is maintained at that level surplus cows and calves are the property of Mr. Whitehead to dispose of as he sees fit."

Some of Ludwick's cattle died and others were sold by Whitehead. In order to maintain Ludwick's herd at the agreed level, Whitehead purchased 18 cows and heifers from defendant Fred J. Knight. Stock notes were issued but not paid. When Whitehead defaulted on the stock notes, he and Knight agreed to a consolidation of the debt into one new note which was secured by a chattel mortgage on the cattle and increase. This mortgage was recorded. Whitehead again defaulted, and Knight decided to repossess and sell the mortgaged cattle. To forestall the repossession, Whitehead then negotiated a loan from plaintiff Scovill in the amount of $2,647-.37, giving Scovill a promissory note secured by a chattel mortgage covering 28 cattle and farm machinery. Whitehead told Scovill that he owned the cattle and that he had purchased them from Knight. Scovill paid the unpaid balance due on the Whitehead note directly to Knight, who did not inform

him of the lease arrangement that Whitehead had with Ludwick, and received a discharge of the Whitehead-Knight chattel mortgage. The new chattel mortgage by Whitehead to Scovill was duly recorded. Neither Scovill nor Knight checked the Register of Deeds for recorded chattel liens in the name of Ludwick. Three chattel mortgages involving cattle were given by Ludwick to a bank and recorded during the Whitehead tenancy. Whitehead defaulted on his note to Scovill and Scovill unsuccessfully tried to replevy the cattle. Subsequently, Ludwick evicted Whitehead, took possession of the cattle, and disposed of them. Scovill brought this action against defendants Ludwick and Knight, setting forth his mortgage against Ludwick and charging him with conversion of the mortgaged cattle, and against Knight, questioning the validity of the Whitehead-Knight mortgage. The case was tried without a jury and the trial court found that Knight was liable to Scovill in the sum of $2,747.37, and no cause of action as to defendant Ludwick. From this decision, defendant Knight appeals.

The question on appeal is whether the mortgage between Whitehead and Knight was invalid.

From the time Whitehead took over the farm, under the lease, the basic herd was always deficient, so that he never had any cows or calves to dispose of as his own. The cattle purchased from Knight without security by Whitehead became the property of Ludwick under the lease agreement immediately upon coming into the possession of Whitehead. Yet, in spite of this, he executed chattel mortgages to Knight and plaintiff Scovill, using animals he knew were not his to deal with.

The trial court determined that the agreement between owner Ludwick and tenant Whitehead, as

far as the cattle were concerned, was self-executing. The trial judge made the following finding:

"Under the terms of the tenant agreement, the cattle represented on the Scovill chattel [mortgage] were the property of Doctor Ludwick and not Whitehead's, regardless of Whitehead's claim that he only sold Ludwick cattle but not Knight's.

"When Knight peddled this deal to Scovill, Knight had nothing to sell but an unsecured note which was unsecured because of his own careless dealings."

Michigan is a lien-theory state, and title to mortgaged chattels remains in the mortgagor. *Young* v. *Phillips* (1918), 203 Mich 566. In *Fidelity Corporation of Michigan* v. *Post* (1935), 273 Mich 697, 702, the court held:

"It seems to be elementary, however, that a valid chattel mortgage may not be executed by anyone upon property which the mortgagor does not own."

Whitehead was bound by the agreement with Ludwick. He had no title to the chattels he attempted to mortgage to Knight. Under Michigan law and on the strength of *Fidelity Corporation*, *supra*, he had nothing to transfer and any attempt to do so would result in an unenforceable and invalid transaction.

Whether Knight knew or should have known of the terms of the tenancy relationship and the recorded Ludwick mortgages is a fact question to be determined by the court from all of the circumstances, logical inferences, and testimony produced at the trial.

The court observed that the whole situation resulted from loose and sloppy dealings of Knight, a man who admittedly dealt in cattle all his life. Specifically, the court found:

"Fred Knight was aware of the fact that Dr. Ludwick was the owner of the farm in question here and that Whitehead, with whom he dealt, was a tenant; yet no inquiry at all was ever made by him as to the agreement or contract between the said owner and tenant. No such inquiry was made of either of them. In addition to that, Knight visited the farm 'most every week."

The court also indicated that Knight should have checked with the Register of Deeds concerning the recorded Ludwick mortgages. In effect, the court determined that there was nothing unusual about a farm landlord-tenant agreement, Knight was experienced in the cattle business, Whitehead was in default, and he should have used this experience and intelligence to protect his security rights. An easy search or a simple question was all that was required to put him on notice. Under these circumstances, the court's determination is reasonable.

In an action such as this, heard without a jury, it rests with the judge as trier of the facts to evaluate the testimony of each witness, to draw permissible inferences therefrom, and to decide the issues in the light of controlling principles. *Minkus* v. *Sarge* (1957), 348 Mich 415.

No transcription of testimony has been submitted by the appealing defendant; however, a review of the materials at hand indicates that there is credible evidence which supports the trial court's findings of fact and application of law. After an examination of the available record, we find that the trial court was not clearly in error. Therefore, we affirm. GCR 1963, 517.1.

Other issues presented by the appellant are without merit and require no further discussion.

Judgment affirmed. Costs to appellees.